PEOPLE v WARREN

Docket No. 190133. Submitted November 4, 1997, at Grand Rapids.
    Decided February 27, 1998, at 9:20 A.M. Leave to appeal sought.

    Brian A. Warren, Sr., was convicted by a jury in the Calhoun Circuit
    Court of felony murder, two counts of first-degree criminal sexual
    conduct (CSC I), first-degree home invasion, assault and battery, kid-
    napping, and unlawfully driving away a motor vehicle (UDAA) after
    he broke into his mother-in-law's house, stabbed her, beat up and
    sexually assaulted his wife, bound and gagged her, and drove away
    in his mother-in-law's automobile. Because the home invasion
    served as the basis for the felony-murder conviction, the court, Ste-
    phen B. Miller, J., ultimately vacated the conviction and sentence
    for home invasion. The defendant appealed.

    The Court of Appeals held:

    1. The trial court did not abuse its discretion in admitting into
    evidence the testimony of the defendant's wife relative to felony
    murder, home invasion, and UDAA. Although the spousal privilege,
    MCL 600.2162; MSA 27A.2162, normally would have barred her tes-
    timony relative to these offenses because they did not grow out of
    a personal wrong or injury done to her by the defendant, her testi-
    mony regarding these offenses was nonetheless properly admissi-
    ble as evidence relevant to the crimes of assault and battery, CSC I,
    and kidnapping committed against her, all of which involved per-
    sonal wrong or injury done to her by the defendant. A party should
    be able to give the jury an intelligible presentation of the full con-
    text in which disputed events took place. Evidence of the crimes
    committed by the defendant against his mother-in-law was so
    blended or connected with the crimes committed by the defendant
    against his wife that proof of the crimes against the mother-in-law
    explained the circumstances of the crimes against the wife.

    2. There was sufficient evidence of secret confinement as an ele-
    ment of kidnapping. The essence of secret confinement is depriva-
    tion of the assistance of others by virtue of the victim's inability to
    communicate the victim's predicament because either the confine-
    ment itself or the location of confinement is secret. In this case, the
    confinement of the defendant's wife was secret. Even though peo-

ple knew she was at her mother's house, no one knew at that time that she was held there against her will by the defendant.

3. Home invasion was a proper basis for felony murder even though, at the time of the defendant's offenses, home invasion was not listed in the felony-murder statute, MCL 750.316; MSA 28.548, as a felony that could underlie felony murder. In replacing breaking and entering with home invasion, the Legislature intended that conduct that would have constituted breaking and entering, and that now constitutes home invasion, serve as a basis for conviction of felony murder.

4. The convictions of CSC I for sexual penetration in circumstances involving the commission of another felony, MCL 750.520b(1)(c);MSA 28.788(2)(1)(c), need not be vacated in light of the vacating of the home invasion offense on which they were based. The CSC statute does not require that the offender be convicted of the accompanying felony.

5. The record does not support the defendant's claim that his confession to the police was involuntary and that his trial counsel was ineffective in failing to challenge the confession.

Affirmed.

1. EVIDENCE — SPOUSAL PRIVILEGE.

The spousal privilege bars the examination of a spouse as a witness for or against the other spouse without the consent of the other spouse; an exception applies in a cause of action that grows out of a personal wrong or injury done by one spouse to the other (MCL 600.2162; MSA 27A.2162).

2. CRIMINAL LAW — EVIDENCE — SPOUSAL PRIVILEGE.

Evidence of other criminal acts is admissible when so blended or connected with the charged crime that proof of the other criminal act explains the circumstances of the charged crime; thus, where a defendant is charged with a crime involving personal wrong or injury to a spouse and with a crime against another person, the testimony of the spouse relative to the crime against the other person may be admitted without violating the spousal privilege if the testimony explains the circumstances of the crime against the spouse (MCL 600.2162; MSA 27A.2162).

3. KIDNAPPING — SECRET CONFINEMENT.

The essence of secret confinement, as an element of kidnapping, is the deprivation of the assistance of others by virtue of the victim's inability to communicate the victim's predicament because the confinement itself or the location of confinement is secret (MCL 750.349; MSA 28.581).

4. HOMICIDE — FELONY MURDER — HOME INVASION.

Murder committed in the perpetration or attempted perpetration of certain forms of home invasion at the time when the felony-murder statute listed breaking and entering a dwelling, but not home invasion, among the felonies that could underlie felony murder constitutes felony murder; the Legislature, in replacing breaking and entering with home invasion, intended that conduct charged as home invasion, but that would have constituted breaking and entering, serve as a basis for felony murder (MCL 750.110a, 750.316; MSA 28.305[a], 28.548).

5. RAPE — CRIMINAL SEXUAL CONDUCT — SEXUAL PENETRATION INVOLVING COMMISSION OF ANOTHER FELONY.

A defendant charged with first-degree criminal sexual conduct for sexual penetration involving the commission of another felony need not be convicted of the other felony in order to be convicted of criminal sexual conduct (MCL 750.520b[1][c]; MSA 28.788[2][1][c]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Susan Mladenoff*, Prosecuting Attorney, and *James B. Jenkins*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Lyle N. Marshall*) and Brian A. Warren, Sr., in propria persona.

Before: MARKEY, P.J., and KELLY and WHITBECK, JJ.

WHITBECK, J. Defendant appeals as of right his convictions by jury of first-degree felony murder, MCL 750.316; MSA 28.548, two counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(c); MSA 28.788(2)(1)(c), first-degree home invasion, MCL 750.110a(2); MSA 28.305(a)(2), assault and battery, MCL 750.81; MSA 28.276, kidnapping, MCL 750.349; MSA 28.581, and the unlawful driving away of a motor vehicle (UDAA), MCL 750.413; MSA 28.645. Defendant was sentenced to life imprisonment without the possibility of parole for the felony-murder

conviction, thirty to sixty years' imprisonment for each of the CSC I convictions, ten to twenty years' imprisonment for the first-degree home invasion conviction, ninety days' imprisonment for the assault and battery conviction, thirty to sixty years' imprisonment for the kidnapping conviction, and three to five years for the UDAA conviction. Defendant's conviction of home invasion and the sentence for the home invasion conviction were subsequently vacated because that offense was used by the prosecution to provide the basis for the felony-murder charge. We affirm.

The record in this case reflects that defendant and his wife engaged in an escalating argument on the evening of January 18, 1995, at their apartment in Battle Creek. Eventually, at approximately midnight, defendant's wife and their two children went with defendant's mother-in-law, Claudette Powell, to Powell's residence, also in Battle Creek. In a statement given to the Battle Creek police on January 19, 1995, defendant stated that, before his wife, the two children, and Powell arrived at Powell's residence, he had gone to that residence "and busted the side window and went in and went downstairs." Defendant also stated that he then hid in the downstairs area of the home.

According to defendant, during the early morning hours of January 19, 1995, the following occurred:

> Then she [Powell] came down and she started beating me with that instrument she had, the mop or whatever it was, started beating me with it. And I grabbed her and we was tussling around and stuff and she said[,] "Call the police, call the police" and I pushed and then she did like this and I looked (inaudible), I looked and she feel [sic], I was like "Oh, my God" and then I run up the stairs, I said "No," you know, and she was, I repeat she was not dead, I did not kill

her, she was not dead, indeed she was bleeding, I seen her blood on the knife, and I said "Oh, my God."

An autopsy conducted on Powell's body revealed numerous sharp-force wounds, in the nature of cuts or stabs, and one blunt-force wound to her body. The expert who conducted the autopsy stated that the sharp-force wounds were inflicted by some type of bladed instrument, and could have been caused by a knife found in the victim's kitchen.

Defendant's wife testified that defendant then beat and sexually assaulted her. Defendant stated that, after two or three hours during which he and his wife were "making love," he heard Powell "moving around" in the downstairs area and that he "went down there and . . . looked," but that he refused to let his wife go downstairs to see her mother. Defendant ultimately left Powell's residence sometime before noon on January 19, 1995, after tying his wife's hands and feet together with shoestrings and gagging her mouth.[1] After defendant left Powell's residence—taking and using Powell's automobile—defendant's wife escaped to a neighbor's house. Ultimately Powell's body was found in her basement, lying in a pool of blood.

I

Defendant first argues that the trial court abused its discretion in allowing defendant's wife to testify regarding the charges of murder, home invasion, and UDAA. Defendant contends that this testimony was prohibited by the spousal privilege.

---

[1] Defendant stated that his wife "wanted me to tie her up" so that she "couldn't call the police on me."

The admission of evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *People v Lugo*, 214 Mich App 699, 709; 542 NW2d 921 (1995). An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made. *People v McAlister*, 203 Mich App 495, 505; 513 NW2d 431 (1994).

The spousal privilege is contained in MCL 600.2162; MSA 27A.2162 and states in pertinent part:

> A husband shall not be examined as a witness for or against his wife without her consent or a wife for or against her husband without his consent, except as follows:
>
> *       *       *
>
> (d) In a cause of action that grows out of a personal wrong or injury done by one to the other . . . .

Defendant argues that two of the crimes against Powell did not "grow out of a personal wrong or injury" done by him to his wife, because those crimes—murder and home invasion[2]—occurred before the crimes against his wife. Defendant cites *People v Love*, 425 Mich 691, 709; 391 NW2d 738 (1986) (WILLIAMS, C.J., concurring) to the effect that, "[s]omething cannot 'grow out of' something that did not exist."

We believe defendant's reliance on *Love* is misplaced. The crimes of assault and battery, CSC, and kidnapping constitute personal wrongs and injuries to

---

[2] There is no question that the crime of UDAA occurred after the crimes against defendant's wife. Nevertheless, defendant argues in portions of his brief that his wife should not have been allowed to testify about the UDAA charge.

defendant's wife. Therefore, the trial court properly admitted the testimony of defendant's wife regarding the circumstances of the commission of these crimes. The fact that such testimony may also have implicated defendant in the crimes of murder, home invasion, and UDAA against Powell does not make such testimony inadmissible. A party should "be able to give the jury an intelligible presentation of the full context in which disputed events took place." *People v Sholl*, 453 Mich 730, 741; 556 NW2d 851 (1996). In this regard, evidence of other criminal acts is admissible when so blended or connected with the charged crime that proof of the other criminal act explains the circumstances of the charged crime. *Id.* at 742.

In this case, while the testimony of defendant's wife about hearing Powell scream from the basement and then seeing defendant coming up the stairs with a knife tended to implicate defendant with regard to the murder and home invasion charges, it also provided important background information regarding why defendant's wife did not provide further resistance to defendant when he physically and sexually assaulted her and confined her within Powell's home. Similarly, the testimony of defendant's wife that defendant took the keys to Powell's automobile and that she then heard an automobile drive away implicated defendant in committing UDAA. However, it also provided an explanation for why defendant bound and gagged his wife, which, in turn, provided strong evidence of secret confinement in connection with the kidnapping charge. Accordingly, we conclude that the trial court did not abuse its discretion by admitting the testimony from defendant's wife that, in addition to providing relevant evidence regarding the

charged crimes that constituted personal wrongs against defendant's wife, also constituted evidence to support the home invasion, murder, and UDAA charges.

II

Defendant argues that there was insufficient evidence that his wife had been secretly confined to support his kidnapping conviction. Specifically, defendant contends that because his wife's relatives, as well as the police, were aware of his wife's location during the time of her confinement, her confinement was not secret.

In a criminal case, due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact in concluding that the defendant is guilty beyond a reasonable doubt. *People v Fisher*, 193 Mich App 284, 287; 483 NW2d 452 (1992). In reviewing a sufficiency of the evidence question, this Court reviews the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could conclude that the elements of the crime were proved beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). When deciding this issue, this Court should not interfere with the jury's role of determining the weight of the evidence or the credibility of the witnesses. *Id.* at 514.

A person can be convicted of kidnapping if it is proved beyond a reasonable doubt that the person wilfully, maliciously, and without lawful authority forcibly or secretly confined or imprisoned any other person within this state against the other person's will. MCL 750.349; MSA 28.581.

In *People v Jaffray*, 445 Mich 287, 309; 519 NW2d 108 (1994), the Michigan Supreme Court provided the following definition of "secret confinement" kidnapping:

> [T]he essence of "secret confinement" as contemplated by the statute is deprivation of the assistance of others by virtue of the victim's inability to communicate his predicament. "Secret confinement" is not predicated solely on the existence or nonexistence of a single factor. Rather, consideration of the totality of the circumstances is required when determining whether the confinement itself or the location of the confinement was secret, thereby depriving the victim of the assistance of others. That others may be suspicious or aware of the confinement is relevant to the determination, but is not always dispositive.

In *People v Johnson*, 171 Mich App 801, 805-806; 430 NW2d 828 (1988), the defendant argued that the victim's confinement could not have been secret because at least one other person saw the defendant take the victim into his apartment and, therefore, others searching for the victim could have traced her to the defendant's apartment. We held that secret confinement can be shown where those who know where the victim is located are unaware that the victim is, in fact, a victim of kidnapping. *Id.*

Here, defendant's sister-in law, Theresa Harris, knew that defendant's wife was spending the night at Powell's residence. Further, the police had been to that residence in response to a report of a break-in and therefore were also aware that defendant's wife was spending the night there. Thus, the *location* of defendant's wife was certainly no secret. However, before her escape, no one outside the home was aware that defendant's wife was at any time *confined*

by defendant. Therefore, as in *Johnson*, although the location of defendant's wife at the time of the kidnapping was not a secret, no third parties were aware that she was the victim of a kidnapping or that she was being confined at all.

Further, a consideration of the totality of the circumstances reveals that defendant's wife was deprived of the ability to communicate her plight to others. Defendant's wife testified that the defendant beat and sexually assaulted her in Powell's residence, barricaded the door, prohibited her from using a telephone, and ultimately bound and gagged her. Therefore, sufficient evidence was presented to establish that defendant had secretly confined his wife, satisfying the requisite elements of kidnapping.

III

Defendant contends that the trial court erred in permitting the jury to consider home invasion as an underlying felony to support a conviction of first-degree felony murder. Defendant preserved this issue below by moving for a directed verdict on the felony-murder charge on the ground that home invasion is not an enumerated felony in the felony-murder statute. When ruling on a motion for a directed verdict, the trial court must consider the evidence presented by the prosecutor up to the time the motion was made in the light most favorable to the prosecution and determine whether a rational trier of fact could find the essential elements of the charged crime were proved beyond a reasonable doubt. *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993). When reviewing a trial court's ruling on a motion for a directed verdict, this Court tests the validity of the motion by the

same standard as the trial court. *People v Daniels*, 192 Mich App 658, 665; 482 NW2d 176 (1992).

Here, defendant was charged with first-degree felony murder. On January 19, 1995, the date of the charged offenses, and on January 20, 1995, the date of the information charging defendant with home invasion, Michigan's first-degree murder statute provided in pertinent part:

> Murder which is . . . committed in the perpetration, or attempt to perpetrate arson, criminal sexual conduct in the first or third degree, robbery, *breaking and entering of a dwelling*, larceny of any kind, extortion, or kidnapping, is murder of the first degree, and shall be punished by imprisonment for life. [MCL 750.316; MSA 28.548 (emphasis supplied).][3]

Defendant must be judged by the statute as it existed at the time of the offense. *People v Whetstone*, 119 Mich App 546, 555; 326 NW2d 552 (1982).

The elements of first-degree felony murder are

---

[3] Explicit reference to the crime of home invasion was added to the first-degree murder statute by an amendment that took effect April 1, 1996, after the date of defendant's conviction and sentence. The first-degree murder statute now includes the following provisions:

(1) A person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life:

\*          \*          \*

(b) Murder committed in the perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a major controlled substance offense, robbery, *breaking and entering of a dwelling, home invasion in the first or second degree,* larceny of any kind, extortion, or kidnapping. [MCL 750.316; MSA 28.548 (emphasis supplied).]

(1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result, (3) *while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316; MSA 28.548.* [*People v Turner*, 213 Mich App 558, 566; 540 NW2d 728 (1995) (emphasis supplied).]

Defendant argues that because, at the time of his conviction, home invasion was not a crime specifically enumerated under the first-degree murder statute, the trial court erred in submitting the charge of felony murder to the jury. On the date of the offenses, the first-degree murder statute listed breaking and entering of a dwelling as an enumerated offense. Also on the date of the offenses (and currently), MCL 750.110a; MSA 28.305(a) (the home invasion statute) provided as follows:

(2) A person who *breaks and enters a dwelling with intent to commit a felony or a larceny in the dwelling or a person who enters a dwelling without permission with intent to commit a felony or a larceny in the dwelling is guilty of home invasion in the first degree* if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.

(b) Another person is lawfully present in the dwelling.

(3) A person who *breaks and enters a dwelling with intent to commit a felony or a larceny in the dwelling or a person who enters a dwelling without permission with intent to commit a felony or a larceny in the dwelling is guilty of home invasion in the second degree.* [Emphasis supplied.]

Thus, under the plain language of the home invasion statute, the elements of home invasion include either

(1) breaking and entering a dwelling with the intent to commit a felony or larceny in the dwelling or (2) entering a dwelling without permission with the intent to commit a felony or larceny in the dwelling. The former offense of breaking and entering a dwelling with intent to commit a felony or larceny required breaking and entering an occupied dwelling. *People v Ferguson*, 208 Mich App 508, 510-511; 528 NW2d 825 (1995). Therefore, the home invasion offenses include, but are not limited to, conduct covered by the former offense of breaking and entering a dwelling with intent to commit a felony or larceny.[4]

With respect to the charge of felony murder, the trial court gave the following instruction:

> Now, to prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First, that the Defendant caused the death of Claudette Powell. That is, that Claudette Powell died as a result of being stabbed with a knife.
>
> Second, that the Defendant had one of these three states of mind: He intended to kill or he intended to do great bodily harm to Claudette Powell or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm was the likely result of his actions.
>
> Third, that when he did the act that caused the death of Claudette Powell, the Defendant was committing the offense of home invasion.
>
> For the crime of home invasion, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First, that the Defendant broke into a dwelling. It does not matter whether anything was actually broken, however

---

[4] The portion of MCL 750.110; MSA 28.305 defining the offense of breaking and entering a dwelling with intent to commit a felony or larceny was removed effective October 1, 1994, the same date that the home invasion statute, MCL 750.110a; MSA 28.305(a), went into effect.

some force must have been used. Opening a door, raising a window, and taking off a screen are all examples of enough force to count as a breaking. Entering a dwelling through an already open door or window without using any force does not count as a breaking.

Second, that the Defendant entered the dwelling. It does not matter whether the Defendant got his entire body inside. If the Defendant put any part of his body into the dwelling after the breaking that is enough to count as an entry.

Third, that when the Defendant entered the dwelling, he intended to commit the offense of assault with intent to do great bodily harm less than murder and/or the offense of murder.

Fourth, that when the Defendant entered, was present in or was leaving the dwelling, either of the following circumstances existed: A, he was armed with a dangerous weapon, or B, another person was lawfully present in the dwelling.

And fourth, for first degree felony murder, that the killing was not justified, excused, or done under circumstances that reduce it to a lesser crime.

Given the trial court's instructions, there can be no doubt that when the jury convicted defendant of felony murder, it found that he committed the underlying felony of home invasion, as defined by the trial court. The trial court's instructions to the jury required the jury to find that defendant committed a breaking and entering of a dwelling with the intent to commit one of two felony offenses in order to find that he committed "home invasion."[5] The precise issue is, thus, whether commission of home invasion, *with a breaking,* constitutes "breaking and entering of a dwelling" under the first-degree murder statute.

---

[5] The trial court effectively precluded the jury from convicting defendant of home invasion based on the "entering without permission" prong of home invasion, which does not require proof of a breaking.

Defendant argues that breaking and entering a dwelling was an enumerated felony at the time of his offense while home invasion was not and that, consequently, the trial court's ruling[6] and instruction were in error. Given the trial court's instructions, however, there can be no reasonable doubt that the jury found that defendant committed a breaking and entering of a dwelling.

Defendant cites *People v Young*, 418 Mich 1; 340 NW2d 805 (1983), in support of his contention that the crime of home invasion must be specifically enumerated in the felony-murder statute in order for it to be the underlying felony supporting a conviction of felony murder. At the time of the 1978 murder offense considered in *Young*, the first-degree murder statute included "burglary" as an enumerated offense but did not include breaking and entering of a dwelling. Accordingly, the *Young* Court concluded that at the time of that murder offense, for first-degree felony murder to be based on breaking and entering of a dwelling, the prosecution had to prove the elements of common-law burglary, which included proof that

---

[6] Defendant objected to the submission of jury instructions regarding the theory of felony murder. The trial court denied defendant's motions, providing the following reasoning:

The Court has concluded since I intend to give an instruction on felony murder that the felony murder statute does now include—by reference to the statute in general, the term breaking and entering, or the new offense of home invasion, so that in a case of this nature, the Court can properly instruct on felony murder even though there has been a change in the nomenclature, I suppose, of the offense, but it's the same statute, and [I] think that is sufficient indication of what the legislature was talking about breaking and entering, or home invasion, whatever it may be called. But the offense they were talking about is a specific offense, specific statute, and very easily identified, okay?

the breaking and entering happened "in the nighttime" with the intent to commit a felony. The Court held that proving breaking and entering alone was not enough. See *id.* at 16-17.

Here, we have the reverse situation. The jury concluded that defendant broke into and entered a dwelling. In short, in finding that a "home invasion" *as defined by the trial court* had occurred, the jury also found that a "breaking and entering of a dwelling" occurred as required by the first-degree murder statute for conviction of felony murder. Rather than finding this case controlled by *Young*, we find it analogous to *People v McDonald*, 409 Mich 110; 293 NW2d 588 (1980). The first-degree murder statute, in effect on the date of the offense committed by the defendant in *McDonald* (June 27, 1976), provided in part that a murder committed in the perpetration or attempted perpetration of a "rape" constituted first-degree murder. *Id.* at 116-117.[7] However, the carnal knowledge statute addressing rape had been repealed and effectively replaced by the statute defining and prohibiting criminal sexual conduct. *Id.* at 116. The Michigan Supreme Court rejected the defendant's argument that repeal of the carnal knowledge statute precluded a conviction of first-degree felony murder based on the commission of a murder during the perpetration or attempted perpetration of a rape:

> Defendant argues that because the former statute punishing rape was repealed and replaced by the present statute punishing criminal sexual conduct the offense known as

---

[7] As set forth above, the first-degree murder statute no longer includes the term "rape," but rather provides that murder committed in the perpetration or attempted perpetration of first-degree or third-degree criminal sexual conduct constitutes first-degree murder.

rape no longer exists. As a result, the crime of first-degree murder based on rape could not properly be charged in an information. We are not persuaded by this argument.

We find the Legislature intended that the repealed carnal knowledge statute define rape for purposes of the first-degree murder statute. *The conduct proscribed by the former carnal knowledge statute upon which a first-degree murder conviction was based is also presently prohibited under the criminal sexual conduct act.* Consequently, the Legislature did not intend to abrogate such conduct as an aggravating circumstance required for first-degree murder. *Rape, as formerly defined under the carnal knowledge law, survives for purposes of prosecution under the first-degree murder statute. [Id.* at 116 (emphasis supplied).]

We similarly conclude that when the Legislature effectively replaced the former offense of breaking and entering an occupied dwelling with intent to commit a felony or larceny with the more broadly defined offense of home invasion, breaking and entering a dwelling survived as enumerated conduct that could form the basis of a first-degree felony-murder conviction under the version of the first-degree murder statute in force at the time of defendant's crimes.

The *McDonald* Court further explained:

Accordingly, at the time the first-degree murder statute was last recodified in 1931, the conduct historically known as rape was prohibited by the carnal knowledge statute. As it exists in the first-degree murder statute, we are convinced that the term "rape" was intended to encompass the course of conduct originally proscribed at common law and subsequently codified and slightly altered by various statutes through the years.

*Even though the provisions of the carnal knowledge statute were replaced by the present criminal sexual conduct statute, the first-degree murder statute and its included designation of rape were in no way altered.* Absent express legislative action to amend the first-degree murder

statute, the definition of "rape" as the proscribed conduct used by trial judges since the last codification of felony murder in 1931 continued in force.

*Defendant was not tried and convicted of rape, but of first-degree murder committed in the perpetration or attempted perpetration of rape. The new criminal sexual conduct statute, while enlarging the scope of sexual activity proscribed by its terms, continues the historic prohibition of the conduct for which defendant was prosecuted under the first-degree murder statute.* [*McDonald, supra* at 118-119 (emphasis supplied).]

Thus, we conclude that defendant did not have to be convicted of "breaking and entering of a dwelling" in order to be convicted of first-degree felony murder based on the commission of a murder during the perpetration or attempted perpetration of a breaking and entering of a dwelling. As in this case, conduct enumerated in the first-degree murder statute considered in *McDonald* was included in the scope of a new criminal statute passed after the pertinent version of the first-degree murder statute. The new criminal statute, however, also included additional conduct not enumerated within the first-degree murder statute.

In *McDonald*, the criminal sexual conduct statute included conduct by males against females that constituted rape, but also included certain additional acts that could be committed by females. See *McDonald, supra* at 118, 122-123. Here, the home invasion statute similarly prohibits both breaking and entering a dwelling with intent to commit a felony or larceny and entering a dwelling without permission, even without breaking, with intent to commit a felony or larceny. As discussed above, the trial court's instructions to the jury required the jury to find that defendant committed a breaking and entering of a dwelling

with intent to commit a felony, specifically, the felony of murder or assault with intent to do great bodily harm, as a prerequisite to convicting him of first-degree felony murder. Accordingly, we conclude that defendant's conviction of first-degree murder should not be disturbed on the basis of this issue because his conviction of first-degree felony murder was predicated on the commission of conduct enumerated in the first-degree murder statute as in force at the time of defendant's crimes.

IV

Defendant next argues that his CSC I convictions should be vacated because his conviction of home invasion was vacated.

Defendant was convicted of two counts of CSC I pursuant to MCL 750.520b(1)(c); MSA 28.788(2)(1)(c) (sexual penetration in circumstances involving commission of another felony). Defendant's CSC I convictions were based on the underlying felony of home invasion. Defendant was also convicted of both felony murder, based on the underlying felony of home invasion, and home invasion. At sentencing, the trial court vacated defendant's sentence for home invasion on the ground that it furnished the predicate offense upon which the felony-murder conviction was based. Convictions of both felony murder and the underlying felony offend double jeopardy protections. *People v Gimotty*, 216 Mich App 254, 259; 549 NW2d 39 (1996). When a defendant is erroneously convicted of both felony murder and the underlying felony, the proper remedy is to vacate the conviction and sentence for the underlying felony. *Id.* at 259-260. Therefore, the

trial court properly vacated defendant's home invasion conviction.[8]

Defendant contends that the vacating of his home invasion conviction "left no underlying felony upon which to support the CSC conviction." We disagree. In an analogous circumstance, conviction of possession of a firearm during the commission of a felony requires as an element that the defendant committed or attempted to commit a felony, but conviction of the underlying felony is not a prerequisite to conviction of felony-firearm. *People v Burgess*, 419 Mich 305, 310; 353 NW2d 444 (1984). Similarly, the criminal sexual conduct statute does not require that a person be *convicted* of the underlying felony in order to be convicted of CSC I in circumstances involving the commission of another felony. In convicting defendant of the CSC I charges, the jury necessarily found as a matter of fact that he committed acts of sexual penetration in circumstances involving the commission of another felony. It is immaterial whether defendant was subject to conviction for the other felony.

V

Defendant also argues that his statements made to police on January 19, 1995, were involuntary and should have been suppressed. Defendant claims that he was under the influence of alcohol (and Tylenol 3) when he made these statements and also that he was suffering from psychological disorders. Further,

---

[8] Although not necessary to disposition of this issue, we note that conviction of both CSC I based on sexual penetration under circumstances involving the commission of another felony and the underlying felony does not violate constitutional protections against double jeopardy. *People v Robideau*, 419 Mich 458, 466; 355 NW2d 592 (1984).

defendant contends that because his counsel failed to object to the admission of such statements, he was denied effective assistance of counsel.

These arguments are specious and unsupported by the record. This Court's review is generally limited to the record of the trial court, and it will generally allow no enlargement of the record on appeal. *Amorello v Monsanto Corp*, 186 Mich App 324, 330; 463 NW2d 487 (1990). The record does not support defendant's claim that his statements to the police were made involuntarily. Therefore, defendant has not established error requiring reversal.

Further, the record contains no evidence that defendant's statement to the police was involuntary. Therefore, we have no basis to conclude that any motion by defendant's counsel to suppress the statement would have had merit. Defense counsel is not required to make useless motions. *People v Tullie*, 141 Mich App 156, 158; 366 NW2d 224 (1985). Defendant has not established that he received ineffective assistance of counsel.

Affirmed.