# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

FRANKLYN DIMUN GARRISON,

        Defendant-Appellant

UNPUBLISHED
January 30, 2018

No.  334063
Wayne Circuit Court
LC No.  15-007041-FC

---

Before:  STEPHENS, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first degree felony murder, MCL 750.316(1)(b), second degree arson, MCL 750.73, fourth degree arson, MCL 750.75, felon in possession of a firearm, MCL 750.224f, and felony firearm, MCL 750.227b.  He was sentenced to the mandatory five-year prison term for felony firearm (second) conviction, with credit for 344 days, life without parole for the first degree felony murder, 6 to 10 years for the felon in possession conviction, and 20 to 40 years and 4 to 10 years for the arson convictions. We affirm.

## I.  BACKGROUND

Defendant's convictions arise from the July 18, 2015 shooting death of Kevin Walker, and the burning of Walker's home and of one of his vehicles sometime between 11:00 p.m. and midnight.  On the evening of July 18, 2015, defendant asked Desmond Johnson, one of several guests at his Eastside home for a ride to a then unnamed friend's house on the Westside of town sometime between 9:30 and 10:00 p.m. Johnson drove defendant and Dakairi Pannell (aka Kaelen Allen) to what became known as the victim's home on Detroit's Westside.  Johnson waited in the car while defendant and Pannell went toward the house.  After waiting about ten minutes, Johnson called defendant, who did not answer.  Johnson called defendant again and told defendant that he was leaving and drove away at about 10:30 p.m.  About an hour later, defendant called Johnson and asked him to return to give defendant a ride, but Johnson refused. Shortly after making this call, defendant turned off his cell phone and did not turn it back on until 2:55 a.m. at which time he placed a call to Pannell/ Allen.

Sometime after 11:00 p.m., Walker's neighbor Geraldyne Reed, saw one of Walker's cars pull out of the spot where it had been parked for months, heard what she thought were firecrackers, and saw the car drive off seconds later.  Ten or fifteen minutes later, her son

-1-

Edward Reed heard someone yelling "fire," and observed Walker's home ablaze. He also saw Walker's body outside of the home on the ground. Mr. Reed waited a few minutes before he placed a call to 911 at 12:48 a.m. The police and fire departments responded shortly thereafter. Fire experts estimated that the fire had been burning for a while and noted that it would have taken at least 20 to 30 minutes to burn in earnest if no accelerant had been used. When the police arrived they observed Walker's body and they noted that he had been shot multiple times and the pockets of his pants had been turned out. No drugs, money, or jewelry were found on his person. Walker's car was later found burned about six blocks from defendant's eastside home.

Defendant was arrested on July 30, 2015 and interviewed by Detroit Police Sergeant Derrick Griffin. His cell phone was examined. However, defendant had manually deleted all of the call information from the cell phone from February 19, 2015 through July 24, 2015. During his interview, defendant admitted getting a ride from Johnson to Walker's house but denied being accompanied by anyone else. He also stated that he was only at the victim's house for about 15 or 20 minutes and that he got home around 1:30 or 2:00 a.m. He insisted that he did not remember how he got home and denied taking one of Walker's cars back home to the east side. Once confronted by Sergeant Griffin with the fact that his cell phone records showed that he had been in the area of the victim's house for about two hours, defendant nodded and replied "that it could have been that long, he was "f***** up." Johnson was also arrested and interviewed, at which time he stated that defendant had given him a broken watch. The watch was later given to the police by Johnson's mother and analyzed for DNA. Johnson also identified Pannell/Allen as the person who rode with defendant in his car to the victim's house.

Several witnesses were called at trial. In addition to the Reeds and Johnson, two of Walker's relatives testified. At trial Walker's nephew and daughter testified that he sold illegal drugs, usually had large amounts of money in his possession, and often wore a significant amount of jewelry. Additionally DNA evidence was introduced. Swabs from Walker's pockets, fingernail clippings, and a watch were examined. The pocket samples showed a mixture, with one major donor and at least two others. Walker was the major donor and Johnson and defendant were excluded as major donors. The sample was insufficient for association purposes concerning the minor donors. The fingernail clippings showed Walker as the sole donor. The watch showed a mixture with Johnson being the major donor. This sample was also insufficient for comparison concerning minor donors. State Police Forensic Scientist Ashley Bolahan, testified that she could not include or exclude anyone from being a minor donor. A cell phone expert was also called who placed the defendant's cell phone in the area of the victim's home from 10:39 p.m. to 11:27 p.m.

After the denial of a motion for directed verdict, the defendant called his mother as a witness. While he had filed a notice of alibi, the alibi witness, the defendant's sister arrived late to court and was not called as a witness. The jury deliberated and returned the guilty verdict from which the defendant appeals.

## II. INSUFFICIENT EVIDENCE

In reviewing a claim of insufficient evidence, the evidence presented below must be viewed in the light most favorable to the prosecution; the test is whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable

doubt.  *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 amended on other grounds 441 Mich 1201 (1992);  *People v Hutner*, 209 Mich App 280, 282; 530 NW2d 174 (1995).

Defendant claims that the trial court erred when it denied his motion for a directed verdict because all the evidence proving his identity as the perpetrator was merely circumstantial.  Thus he contends that there was insufficient evidence to support the prosecution's argument that it was him who shot the victim or aided and abetted in the crime.  We disagree.

Contrary to defendant's argument, direct evidence is not required.  "Circumstantial evidence and reasonable inferences arising therefrom can sufficiently establish the elements of a crime."  *People v Schultz,* 246 Mich App 695, 702; 635 NW2d 491 (2001).  To sustain a conviction for first degree felony murder, it must be established that the defendant caused the death while in the commission of another specified felony, in this case that being larceny.  MCL 750.316(1)(b).  It must be proven "that the defendant committed or attempted to commit that crime and he knowingly carried or possessed a firearm."  MCL 750.227b.  There is no dispute that someone used a firearm to kill Walker on the evening of July 18, 2015, committed arson and stole his car.  There was also credible testimony on the record regarding larceny.  Two persons, close to the victim testified that the victim always carried large sums of money on him.  The victim's body was found with his pockets turned out and empty.

Sufficiency of evidence as to defendant's identity as the perpetrator is the key focus of our analysis and we conclude that the evidence on that issue was sufficient.  The record shows that defendant demonstrated guilt in his conduct with the police during his videotaped interview on July 30, 2015 following his arrest when he repeatedly gave false and inconsistent statements to police.  He initially told police that he paid someone other than Johnson to take him to the victim's house and he denied remembering how he had gotten home or that he had taken Pannell/Allen with him to the victim's house.  He also stated that he had only stayed at the victim's house for about 15 minutes.  It was not until the police confronted him with evidence that his cell phone records showed that he had been in the Westside area for about two hours and with information that they had spoken to Johnson who had stated that it was him that had given defendant and someone else a ride to the victim's house that defendant began to be more truthful.  Defendant admitted that he had taken Panell/Allen with him and that it was Johnson who had given them the ride.  He also conceded that when he had called Johnson to come back and get him that Johnson did not return to pick him up.

There was significant testimony placing the defendant at the house in the relevant time period.  He admitted going to the home with Pannell/Allen and conceded that Johnson left them there.  He claims he left before the arson, murder or larcenies occurred.  However, the calls between Johnson and the defendant demonstrated that his cell phone was on the Westside at or around 10:30 p.m.  Johnson's testimony corroborates that he was asked to pick the defendant up from the victim's house at about that same time.  The stolen vehicle, which was found only blocks from the defendant's home, was seen by the victim's neighbor Geraldyne Reed being driven away from the home sometime after 11:00 p.m. right after she heard what she thought were firecrackers.

Viewing the circumstantial evidence and reasonable inferences in the light most favorable to the prosecution, there was sufficient evidence to convince a jury beyond a

-3-

reasonable doubt that defendant committed or aided and abetted in the crimes for which he was convicted.

## III. PROSECUTORIAL MISCONDUCT

Defendant failed to object to the prosecutor's statements so this issue is unpreserved. "Unpreserved issues are reviewed for plain error affecting substantial rights." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010), lv den 489 Mich 897 (2011). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. "[T]his Court cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id.*

Defendant argues that he was denied a fair trial when the prosecutor engaged in misconduct by stating to the jury during rebuttal closing arguments that the defendant had shaken his head no and appeared to be mouthing something to Mr. Johnson when Mr. Johnson was on the witness stand. The prosecutor's statements were made in relation to Mr. Johnson's refusal while on the stand to identify the watch that the police recovered from Johnson's home as the same watch that defendant gave to him a couple of days after the shooting.

"To determine if a prosecutor's comments were improper, we evaluate the prosecutor's remarks in context, in light of defense counsel's arguments and the relationship of these comments to the admitted evidence." *People v Seals,* 285 Mich App 1, 22; 776 NW2d 314 (2009). The record does not support the prosecutor's statement that the defendant mouthed anything to Mr. Johnson. Like defense counsel, the prosecutor if he observed this conduct, had the opportunity and arguably the obligation to make a record of the conduct. He did not do so either outside of the presence of the jury or through questioning of Johnson. Defendant argues that the prosecutor was precluded from vouching for the credibility of his witness because his remarks would have been considered by a jury as stemming from some personal or special knowledge concerning the truthfulness of his witness due to his position. *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). It is lamentable that the prosecutor failed to make a record of the conduct upon which he made comment, leaving us unable to determine if the conduct occurred. However, even if the statement was improper, defendant cannot prove that there was any prejudicial effect.

We are aware that no objection was made to the comment and that "a timely objection and curative instruction would have been sufficient to alleviate any prejudicial effect of these inappropriate prosecutorial arguments." *People v Unger*, 278 Mich App 210, 241; 749 NW2d 272 (2008). However, despite the lack of curative instruction, the trial court instructed the jury at the beginning and end of the trial that the lawyers' statements and arguments were not evidence. Jurors are presumed to follow the instructions of the court and these instructions "dispelled any prejudice" to defendant making him unable to meet his burden of proving that his substantial rights were affected. *Bahoda*, 448 Mich at 281. Moreover, the prosecutor's comment about the head nodding was a very small part of the closing argument.

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant's effective assistance of counsel claim is not preserved for appeal. "In order to preserve the issue of effective assistance of counsel for appellate review, the defendant should make a motion in the trial court for a new trial or for an evidentiary hearing." *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Defendant took neither of these steps. "Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

Defendant argues through counsel and in his Standard 4 brief, that counsel was ineffective for:

1. Failing to object to prosecutor's argument as discussed above.

2. Failure to object to jury instruction error regarding responses to jury inquiry.

3. Failure to request an adjournment to obtain alibi testimony.

"To establish ineffective assistance of counsel, 'the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that but for counsel's error, the result of the proceedings would have been different defense counsel's deficient performance prejudiced the defendant." *Strickland v Washington,* 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

A. Prosecutor's Statement

As discussed above, we have concluded that the prosecutor's statements during rebuttal did not prejudice the defendant. Therefore, counsel's failure to object to that statement was not ineffective assistance of counsel. Counsel is not ineffective for failing to make a futile or meritless objection. *People v Johnson*, 315 Mich App 163, 175; 889 NW2d 513 (2016).

B. Jury Instructions

Defendant additionally claims that counsel was ineffective in failing to object to certain instructions. He also argues that the trial court judge erred in instructing the jury on aiding and abetting, inducement, and on mere presence, because the evidence did not support any of these theories, and the note the jury sent to the judge asking for clarification on "aiding and abetting" indicated that they were not clear on the instructions given and the court refused to offer guidance in response to this question. We analyze both arguments and reject both.

We have discussed the standard of review for ineffective assistance of counsel and apply that standard to counsel's actions. As to the court's claimed error, defendant did not object to the jury instructions at trial so this issue is unpreserved. "This Court reviews unpreserved challenges to jury instructions for plain error affecting a party's substantial rights." *People v Jackson*, 313 Mich App 409, 421; 884 NW2d 297 (2015). On plain-error review, the burden is on the defendant to establish (1) error; (2) that was plain, meaning clear and obvious; and (3) that caused prejudice, meaning that the error affected the outcome of the lower court proceedings. However, even where a defendant meets these three requirements, this Court will only reverse

where the error resulted in the conviction of an innocent defendant or it "seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.*

During jury deliberations, the judge received a note that stated: "How does aiding and abetting apply to first degree murder in this case." The note then went on to read: "Can you please clarify aiding and abetting?" The trial court, with the attorneys and defendant present, then went back on the record and read the jury's note. The trial court then engaged in the following exchange with the parties:

> THE COURT: It almost sounds to me the way that they've worded this that they want me to say, "How would you apply the theory of aiding and abetting in this case-which I certainly am not going to do- and Counsel argued for and against that in their closing statements. People versus Turner has an extensive quote which basically is tracked by the language of the aiding and abetting instruction . . . I suppose we could send in the statutory language and a note saying, "Here is the instruction. That is the language you have to follow."

> MR. GLENN: And it would also be mere presence because I believe they need to be read together.

> THE COURT: Right, but I don't see anything that I can say to them that would clarify it.

> MR. GLYNNE: I have no issue with-

> THE COURT: Let me see what the inducement instruction says:

> "It does not matter how much help, advice or encouragement the defendant gave, however you must decide whether the defendant intended to help another commit the crime and whether his help, advice or encouragement actually did help, advise or encourage the crime."

> I suppose we could send that in as well.

> MR. GLYNNE: I don't mind that-certainly with the mere presence would-

> THE COURT: All right. So I'll resubmit 8.01, 8.04 and 8.05 as well as the statutory language and tell them that's the best that I can do, okay?

Neither party objected to the trial court's instructions as given to the jury.

In support of his argument that the trial court "refused" to provide the clarification and guidance requested by the jury, defendant only cites to portions of the exchange cited above as opposed to the exchange in its entirety. However, when read in context, the exchange shows that the trial court judge gave the jurors guidance by providing the additional statutory language and resubmitting the jury instructions for 8.01, 8.04, and 8.05. Further, the trial court's instructions

to the jury, reviewed in their entirety, adequately presented the issues and elements, and sufficiently protected defendant's rights.

### C. Adjournment Request

Defendant's next claim of ineffective assistance of counsel pertains to counsel's failure to ask for an adjournment to obtain his sister's testimony. "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." People *v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). A substantial defense is one that might have made a difference in the outcome of the trial. At best Ms. Garrison would have testified that the defendant arrived home at around 12:30 a.m. Had counsel asked for an adjournment to await her tardy arrival, her testimony would not have accounted for the defendant's whereabouts when the crimes were committed.

## V.  OTHER STANDARD 4 BRIEF ISSUES

## A. ISSUANCE OF SEARCH AND ARREST WARRANTS

Because defendant failed to make a pretrial motion to suppress the evidence resulting from the search and arrest warrants, there is no evidence in the lower court record regarding the circumstances preceding the applications for the issuance of the warrants for defendant. Accordingly, his challenges to these warrants are not properly preserved for appellate review. This Court reviews unpreserved evidentiary issues under the plain error doctrine. *People v Carines*, 460 Mich 750, 761; 597 NW2d 130 (1999).

Defendant argues that the search warrant obtained to search his home lacked probable cause because the information provided in the supporting affidavit was legally and factually deficient. In support of his argument, defendant cites the warrant used in this case to execute the search and its underlying affidavit. Neither of these two items are part of the lower court record; defendant has simply attached them to his Standard 4 brief on appeal. Defendant cannot enlarge the lower court record by including these materials for the first time on appeal. *People v Warren*, 228 Mich App 336, 356; 578 NW2d 692 (1998), aff'd in part, rev'd in part on other grounds 462 Mich 415; 615 NW2d 691 (2000). Accordingly, this Court has no basis upon which to decide this issue.

Similarly, defendant argues the arrest warrant was invalid because it was not accompanied by an affidavit, was not signed by a magistrate judge or judicial officer, and the complaint it was based on relied on conclusory language, depriving the trial court of jurisdiction. However, "an illegal arrest or arrest warrant issued on defective procedure will not divest a court of jurisdiction when the court has jurisdiction over the charged offense and the defendant appears before the court." *Porter v Porter*, 285 Mich App 450, 462; 776 NW2d 377 (2009). Thus, defendant has failed to establish that any defect in the warrant divested the trial court of jurisdiction.

## B.  SPEEDY TRIAL

Defendant's speedy trial argument is also unpreserved and we, therefore, review it for plain error affecting defendant's substantial rights.[1] In determining whether a defendant was denied his right to a speedy trial, a court must balance four factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) prejudice to the defendant. *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). If the delay is 18 months or more, prejudice is presumed. A "presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *People v Wickham*, 200 Mich App 106, 109-110; 503 NW2d 701 (1993). "When the delay is less than 18 months, the defendant must prove that he or she suffered prejudice." *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999).

The time for judging whether a defendant has been denied his right to a speedy trial starts from the date of his arrest. *Williams, supra* at 261. Defendant was arrested on July 30, 2015. Despite numerous adjournments, defendant's trial commenced on June 1, 2016 and concluded on June 10, 2016. Consequently, the time period between his arrest and trial was only 11 months. Additionally, defendant fails to demonstrate that he was prejudiced by the 11 month delay citing only that he endured undue anxiety being an older defendant. However, "anxiety alone is insufficient to establish a violation of defendant's right to a speedy trial." *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997). In considering the prejudice to the defendant, the most serious inquiry is whether the delay has impaired the defendant's defense. *People v Simpson*, 207 Mich App 560, 564; 526 NW2d 33 (1994). Defendant focuses his arguments on the issue of impairment to his defense on his first appointed counsel's numerous deficiencies in performance and ultimate withdrawal. However, he offers no explanation of how this passage of time affected his successor counsel's ability to marshal an effective albeit unsuccessful defense.

## C. CUMULATIVE ERROR

Defendant finally argues that the cumulative effect of the errors requires that we reverse his conviction and grant him a new trial. However, because we conclude that defendant failed to establish error, there can be no cumulative effect requiring reversal. *People v Mayhew,* 236 Mich App 112, 128; 600 NW2d 370 (1999).

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

---

[1] *Carines, supra* at 763-764.