Timothy HOLTGREIVE,
# 247755, Petitioner,

v.

**Bruce CURTIS, Respondent.**

No. 00–72295–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 31, 2001.

Raina I. Korbakis, Michigan Dept. of Atty. General, Lansing, MI, for Bruce Curtis.

## MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

HOOD, District Judge.

### I. Introduction

Petitioner, Timothy Holtgreive ("Petitioner"), presently confined at the South-

ern Michigan Correctional Facility in Jackson, Michigan, has filed this *pro se* application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, Petitioner attacks his convictions for one count of first degree home invasion, M.C.L. § 750.110a(2), and one count of escape while awaiting trial for a felony. M.C.L. § 750.197(2). Petitioner's convictions were entered pursuant to a counseled plea bargain. In exchange for Petitioner's guilty plea, two counts of felonious assault (or assault with a dangerous weapon) and two counts of felony firearm were dismissed. Additionally, Petitioner's guilty plea included an agreement that he would be sentenced to two to four years on the escape charge and that the prosecution would make no recommendation concerning his sentence for the home invasion charge. Petitioner was sentenced to seven years and six months to twenty years for the home invasion conviction and two to four years for the escape conviction.

Petitioner contends that his convictions and sentences are unconstitutional because the trial judge failed to establish a factual basis for his guilty plea his guilty plea was uninformed, unintelligent, and involuntary; he received ineffective assistance of counsel in the plea-taking process; and his sentence was improperly increased by the trial judge's reliance on unproven contested allegations. For the reasons stated below, the petition for a writ of habeas corpus is DENIED.

## II. Background

### A. Guilty Plea and Sentence

On January 5, 1996, Petitioner pleaded guilty to charges of home invasion and escaping from jail while awaiting trial for a felony. Petitioner admitted going to the home of his ex-wife, knocking on the door, pushing his way in after his ex-wife opened the door, and scaring his ex-wife with a pistol. According to Petitioner, the pistol was a BB gun. Petitioner admitted that he did these things to scare his ex-wife. Guilty Plea Transcript ("Plea Tr.") at 15–16. Petitioner also admitted that, after having been in custody awaiting trial on home invasion and other felony charges for almost two months, he pulled the fence up in the jail's exercise yard, crawled underneath it, climbed up the fence and stepped on the roof of the nearby courthouse, with the intent and purpose of escaping from jail.

Petitioner was charged with first degree home invasion, felonious assault, felony firearm, and escape while awaiting trial on felony charges. Petitioner pleaded guilty to the home invasion and escape charges in exchange for dismissal of the felonious assault and felony firearm charges and a promise that he would be sentenced to two to four years on the escape charge.

The trial judge informed Petitioner that he had a right to a jury trial or a bench trial on all of the charged counts. Petitioner was informed that he had a right to the presumption of innocence concerning all of the charges against him and that, if he went to trial, the prosecution would bear the burden of proving his guilt beyond a reasonable doubt. Petitioner was informed that he had the right to appointed counsel, the right to be present during any trial, the right to cross-examine witnesses, and the right to call witnesses on his behalf. Petitioner was informed of his right to testify on his behalf and his right not to testify at all. He was informed that, if he chose not to testify, his silence could not be used against him. Petitioner was informed that if he pleaded guilty he would be giving up all of the trial rights of which he had been informed. Petitioner addressed the court and stated that he understood his trial rights and that he wanted to waive them and plead guilty.

Petitioner was also informed that, if he pleaded guilty, he would not have an appeal of right of his plea or sentence, but rather, would be limited to asking the Court of Appeals for permission to appeal which could be denied. Petitioner stated that he understood this also.

Defense counsel stated on the record that Petitioner was pleading guilty to one count of first degree home invasion and one count of escape in exchange for dismissal of the remaining charges and a promise that he would be sentenced to two to four years on the escape charge. The prosecution also agreed not to make a sentence recommendation regarding the home invasion charge.

The trial judged informed Petitioner that the maximum penalty for home invasion was twenty years, the maximum penalty for escaping from jail while awaiting trial for a felony was four years, and that the sentence imposed for escape would not begin until he had fully served any sentence imposed for home invasion. Petitioner stated that he understood that the maximum sentence for home invasion was twenty years, the maximum sentence for escape was four years, to be served consecutively to his home invasion sentence, and the constitutional rights he would be waiving by pleading guilty. Petitioner further stated that he understood the charges which would be dismissed upon his guilty plea and that he would be sentenced to two to four years for escape.

Petitioner stated he had not been threatened or promised anything not reflected in the record. Petitioner stated that he was asking the Court to accept his guilty plea. The trial judge then accepted Petitioner's guilty plea, finding that it was offered freely, voluntarily, and knowingly.

On February 5, 1996, Petitioner was sentenced to seven and a half to twenty years for home invasion and a consecutive two to four years for escape. At Petitioner's sentencing hearing, Petitioner testified that he threatened his ex-wife and a woman named Gerri Lynn Pecnik with a BB pistol after forcibly entering his ex-wife's cabin. Larry Pecnik, Gerri Lynn Pecnik's brother-in-law, testified that Petitioner had shown him a 9 mm handgun on three occasions. Larry Pecnik testified that the BB pistol in the courtroom was not the gun Petitioner had shown him. Larry Pecnik testified that he could have put his pinkie finger in the barrel hole of the 9 mm, but that the barrel hole of the BB gun was much smaller. Larry Pecnik did not testify that he was present at the home invasion of Petitioner's ex-wife's cabin. Petitioner denied having shown Larry Pecnik a 9 mm handgun and denied having threatened his ex-wife and Ms. Pecnik with a 9 mm gun.

Petitioner's ex-wife, Jean Marie Hobig, testified that Petitioner had a short temper and had begun punching walls, slamming doors breaking them off hinges, threatening her dogs, and driving cars dangerously before the home invasion. Petitioner invaded her home and threatened her and Gerri Pecnik after driving about four and a half hours to get there. Ms. Hobig stated that, "He didn't have a gun, and then it was a BB gun. He didn't threaten us, and then all of the sudden, 'Yes,' he did threaten us, to scare us." Sentencing Transcript ("Sentencing Tr.") at 58. Ms. Hobig further testified that unless Petitioner could be made to understand that he is responsible for his actions, she feared that her life would be in jeopardy upon his release.

Ms. Pecnik testified that the night of the home invasion was the scariest night of her life. She further testified that she saw Petitioner pull a clip out of his pocket and then pulled bullets out. Petitioner then turned his back and loaded the gun before

brandishing it at his ex-wife and her. Ms. Pecnik further testified that the "hole" in the gun Petitioner had the night of the home invasion was "a lot bigger" than the "hole" in the BB gun in court. Sentencing Tr. at 59.

The court found that "the Defendant probably had a pistol, and had bullets. And, then, for the next two hours, the Defendant threatened these two women with this gun. And then finally was talked out of it and left." Sentencing Tr. at 63. On the basis of these findings and Petitioner's guilty plea, Petitioner was sentenced to seven and a half to twenty years for home invasion and a consecutive two to four years for escape.[1]

### B.  Post–Conviction Procedural History

Petitioner sought leave to appeal his convictions and sentences to the Michigan Court of Appeals raising the following claims:

I.  Resentencing is required where the court considered contested allegations in determining sentence without proof by a preponderance of the evidence of the truth of those allegations, in violation of due process of law.

II.  The consecutive sentence of seven and one-half year minimum term of imprisonment for first degree home invasion, either standing alone or considered in the aggregate with the consecutive minimum term of two years for escape from jail, is an abuse of discretion and disproportionate to the offense committed and this offender.

The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal for lack of merit in the grounds presented. *People v. Holtgreive*, Michigan Court of Appeals Docket No. 200950 (June 9, 1997). The Michigan Supreme Court denied Petitioner's delayed application for leave to appeal raising the same claims, because the court was not persuaded that the questions presented should be reviewed. *People v. Holtgreive*, Michigan Supreme Court Docket No. 110174 (May 28, 1991).

In February of 1998, Petitioner filed a motion to correct the presentence report

---

1.  Petitioner's ex-wife, Jean Marie Hobig, testified at Petitioner's preliminary examination. Ms. Hobig testified that, without her permission, Petitioner came to her cabin at about four in the morning. Ms. Hobig and her female friend Jerry (spelled Gerri in the Sentencing Tr.) Pecnik were awakened by the agitated barking of her dog and seeing lights outside the cabin. Someone at the door repeatedly demanded, "let me in." Ms. Hobig asked "who is it" and Petitioner identified himself. Ms. Hobig opened the inside door without inviting Petitioner inside or opening the outside door. Petitioner then pushed the door open, let himself in, and began brandishing a gun. Petitioner walked about the cabin for a time before announcing to his ex-wife, "I'm going to have to kill you." ' Preliminary Examination Tr. at 9. During the home invasion, Petitioner alleged that Ms. Hobig had broken their divorce agreement and stated that, consequently, he had to kill her. Petitioner made various other threats before announcing that he would have to kill Gerri Pecnik also, because she was a witness. He was holding the gun in his hand the entire time. *Id.* at 10. Ms. Hobig saw Petitioner load the gun while he was in the cabin. Petitioner pointed the gun at Ms. Hobig at times. Petitioner threatened that he would come after the women if they told anyone about the incident. Petitioner stayed in the cabin making threats and brandishing the pistol for about an hour and a half before he finally put the pistol in his pocket and left. *Id.* at 12–13. Jerry(or Gerri) Lynn Pecnik testified in a manner consistent with the testimony of Ms. Hobig. Ms. Pecnik thought it was about 4:30 a.m. when Petitioner came inside. Ms. Pecnik testified that Petitioner threatened to kill both Ms. Hobig and her. Ms. Hobig also testified that she heard Petitioner load the gun which made a "click, click" sound as it was loaded. *Id.* at 39. It was undisputed that Petitioner did not fire the gun or hit anyone with it.

with the trial court. The motion was denied in an opinion and order dated August 25, 1998. The trial court denied Petitioner's motion for reconsideration on September 17, 1998. Petitioner's delayed application for leave to appeal was denied by the Michigan Court of Appeals for lack of merit in the grounds presented. *People v. Holtgreive*, Michigan Court of Appeals Docket No. 215316 (November 17, 1999). The Michigan Supreme Court denied Petitioner's delayed application for leave to appeal. *People v. Holtgreive*, Michigan Supreme Court Docket No. 116072 (April 25, 2000).

Petitioner filed a motion for relief from judgment in the trial court raising the following claims:

I. The defendant was denied due process of law under the Michigan Constitution of 1963, Article 1 and 17, and the United States Constitution, Amendment XIV, when the trial court failed to establish a proper and sufficient factual basis for defendant's plea of guilty to the charge of first degree home invasion.
II. The representation of defendant's trial counsel who advised defendant to enter a plea of guilty to the crime of home invasion was not within the range of competence demanded by attorneys in criminal cases under the Sixth and Fourteenth Amendments to the United States Constitution, as well as the Michigan Constitution of 1963, Article 1, § 17 and 20.
III. The defendant can establish "cause" and "prejudice" in order to prosecute this appeal and attack on his guilty plea.

The trial court issued an opinion and order denying Petitioner's motion for relief from judgment.[2] The Michigan Court of Appeals dismissed Petitioner's application for leave to appeal the trial court's denial of his motion for relief from judgment, stating that the trial court erred in accepting the motion. The Michigan Court of Appeals order states that Petitioner's earlier motion labeled a motion to correct presentence report should have been considered his first motion for relief from judgment and that his motion labeled a motion for relief from judgment therefore should have been rejected as an improper second motion for relief from judgment under M.C.R. 6.502(G). *People v. Holtgreive*, Michigan Court of Appeals Docket No. 220647 (August 13, 1999). Rehearing was denied in an order dated October 20, 1999. The Michigan Supreme Court denied Petitioner's application for leave to appeal because the court was not persuaded that the questions presented should be reviewed. *People v. Holtgreive*, Michigan Supreme Court Docket No. 115756 (April 25, 2000).

On or about May 19, 2000, Petitioner filed the present application for a writ of habeas corpus raising the following claims as grounds for relief:

I. WHETHER THE PETITIONER WAS DENIED DUE PROCESS OF LAW UNDER THE UNITED STATES CONSTITUTION, AMENDMENT XIV, WHEN HE ENTERED A MISINFORMED GUILTY PLEA TO THE TRIAL COURT OF FIRST DEGREE HOME INVASION IN WHICH

---

**2.** Respondent quotes the trial judge's denial of the motion as stating the following: "Both grounds are spurious. The plea transcript clearly sets forth a factual basis for each offense. In return for his plea. Defendant obtained the dismissal of five other pending felonies and a sentence bargain limiting the sentence on the escape charge. The Defendant does not articulate in any factual way how his lawyer ineffectively assisted him in the fact of this record." A copy of the trial judge's order denying Petitioner's motion for relief from judgment does not appear to be included in the record.

THE TRIAL COURT FAILED TO ESTABLISH A PROPER AND SUFFICIENT FACTUAL BASIS FOR THE PLEA.

II. WHETHER THE REPRESENTATION OF PETITIONER'S TRIAL COUNSEL, WHO ADVISED PETITIONER TO ENTER A PLEA OF GUILTY TO THE CRIME OF FIRST DEGREE HOME INVASION, WAS WITHIN THE RANGE OF COMPETENCE DEMANDED OF ATTORNEYS IN CRIMINAL CASES UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

III. WHETHER PETITIONER WAS DENIED DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHERE THE TRIAL COURT CONSIDERED CONTESTED ALLEGATIONS IN DETERMINING SENTENCE WITHOUT PROOF BY A PREPONDERANCE OF THE EVIDENCE OF THE TRUTH OF THESE ALLEGATIONS.

For the reasons set forth below, the Petition for Writ of Habeas Corpus is denied.

**III. Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), govern this case because Petitioner filed this habeas petition after the AEDPA's effective date. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

This court must defer to the state court's legal conclusions unless they are contrary to or unreasonably apply clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). This Court must defer to the state court's factual conclusions unless they are based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). Additionally, § 2254(e)(1) requires that this Court presume the correctness of state court factual determinations. A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998), *cert. denied,* 527 U.S. 1040, 119 S.Ct. 2403, 144 L.Ed.2d 802 (1999).

In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court undertook a detailed analysis of the correct standard of habeas corpus review under the AEDPA. In *Williams,* the Supreme Court stated that habeas relief may only be granted where a state prisoner's confinement is based on a state court decision which is either 1) contrary to federal constitutional law, 2) an objectively unreasonable application of federal constitutional law, or 3) an unreasonable determination of the facts. A

state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [theirs]." *Williams v. Taylor*, 529 U.S. at 405, 120 S.Ct. 1495. A state court decision will be deemed to be "objectively unreasonable" if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case ... [or] if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 376, 407, 120 S.Ct. 1495.

In evaluating a state court decision under the "unreasonable application" clause, the Supreme Court further stated that a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1522. "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously

or incorrectly. Rather, that application must also be unreasonable." *Id.*

The Supreme Court also clarified that the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," refers only to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 1523. In determining what constitutes clearly established federal law, therefore, a federal habeas court is restricted to pertinent United States Supreme Court precedent.[3]

## IV. Discussion

### A. State Procedural Default

Respondent has answered the petition. In its order dismissing Petitioner's motion for leave to appeal the denial of his motion for relief from judgment, the Michigan Court of Appeals found that "the motion labeled a motion to correct presentence report was actually the first motion for relief from judgment." *People v. Holtgreive*, 220647 at 1. Consequently, the Court of Appeals dismissed Petitioner's motion for leave to appeal, holding that the trial court should have treated the first motion Petitioner styled a motion for relief from judgment as a second such motion and refused to accept it. Respondent contends that Petitioner's habeas claims I and II are therefore barred by his procedural

---

**3.** This does not mean, however, that the decisions lower federal courts are irrelevant. First of all, this Court is bound by pertinent decisions of the United States Court of Appeals for the Sixth Circuit. *See Timmreck v. United States*, 577 F.2d 372, 374 n. 6 (6th Cir.1978), rev'd on other grounds, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); *Conrad v. Rofin–Sinar, Inc.*, 762 F.Supp. 167, 172 (E.D.Mich.1991). Thus, to the extent that the Sixth Circuit has held that certain Supreme Court cases "clearly establish" federal law in certain respects, this Court is bound by

those determinations, regardless of whether this Court would interpret the Supreme Court precedent differently. Further, although the federal court is limited to Supreme Court precedent in determining whether a particular right is clearly established, "[t]o the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness *vel non* of the state court's treatment of the contested issue." *O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir.1998).

default of failing to raise them in his first motion for relief from judgment.

■ For purposes of federal habeas corpus review, the court may only consider as an adequate and independent state procedural rule a state procedural rule that was "firmly established and regularly followed by the time as of which it [was] to be applied." *Ford v. Georgia*, 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991).

M.C.R. 6.502(G)(1) limits prisoners to one motion for relief from judgment attacking a particular judgment after August 1, 1995. Petitioner was convicted on January 5, 1996, and sentenced on February 5, 1996. Petitioner filed the motion he styled a motion to correct presentence report in February of 1998, and the motion he styled a motion for relief from judgment in July of 1998. Therefore, it is clear that M.C.R. 6.502(G) was effective before Petitioner's convictions were entered and throughout the subsequent period.

This Court is not persuaded, however, that deeming or construing a *pro se* motion to correct presentence report as a first motion for relief from judgment is a firmly established and regularly followed rule. In its order dismissing Petitioner's motion for leave to appeal, the Michigan Court of Appeals cited *People v. Mehall,* 454 Mich. 1, 5, 557 N.W.2d 110 (1997), for the proposition that it was necessary for the trial court to determine the substance of the motion that was labeled a motion to correct presentence report. However, *Mehall* does not address postconviction motions under M.C.R. 6.500. *Mehall* addresses whether a judge's granting of a motion for a directed verdict of acquittal functions as an acquittal for double jeopardy purposes and notes that "the trial court's characterization of its ruling is not dispositive, and what constitutes an 'acquittal' is not controlled by the form of the

action." *Mehall* at 5, 557 N.W.2d 110. This general principle and its application to acquittals does not establish a firm and regularly followed rule concerning motions for relief from judgment.

In the present case, the trial court did not recognize Petitioner's motion to correct presentence report as a motion for relief from judgment. In *People v. Milik,* 459 Mich. 928, 589 N.W.2d 288 (1998), the Michigan Supreme Court remanded a case to the trial court for resentencing in lieu of granting leave to appeal. Justice Boyle dissented, maintaining that leave to appeal should have been denied, because the order "grants the defendant relief on an issue which was not raised or addressed in the initial post-conviction motion for relief from judgment." *Id.* This dissent indicates that M.C.R. 6.502(G) may not be so firmly established and regularly followed as to be an effective procedural bar. Further, Respondent has not cited, and this Court has been unable to find, any Michigan appellate cases (apart from Petitioner's) holding that a motion to correct presentence report (or other limited *pro se* motion attacking sentence) must be considered a first motion for relief from judgment.

In any event, this Court need not determine whether Petitioner's claims I and II are barred by procedural default. This Court finds "that the procedural default issue raises more questions than the case on the merits. [T]his Court will therefore assume without deciding that there was no procedural default by petitioner and decide the merits of the case." *Binder v. Stegall,* 198 F.3d 177, 178 (6th Cir.1999).

**B. The Merits of Petitioner's Claims**

**1. Claim I—Alleged Inadequate Factual Basis Supporting Petitioner's Guilty Plea**

Petitioner contends that his guilty plea violates due process of law because the

trial judge failed to establish an adequate factual basis supporting his guilty plea. This claim does not merit habeas relief for the following reasons.

■ First, there is no federal constitutional requirement that a factual basis be established to support a guilty plea.

In *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the Supreme Court held that a guilty plea which was a voluntary and intelligent choice among alternatives available to the competently represented defendant, was not compelled within the meaning of the Fifth Amendment merely because the plea was entered to avoid the possibility of the death penalty. The Supreme Court also held that where strong evidence of factual guilt of all of the elements of the crime substantially negated the defendant's claim of innocence and the defendant, advised by competent counsel intelligently concluded he should plead guilty, it was constitutionally permissible to accept his guilty plea despite his explicit claim of factual innocence. *North Carolina v. Alford*, 400 U.S. at 167–68, 91 S.Ct. 260. The Supreme Court noted that "while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Alford*, 400 U.S. at 167, 91 S.Ct. 260. As the Supreme Court stated in *Haring v. Prosise*, 462 U.S. 306, 318, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), "defendant's decision to plead guilty may have any number" of motivations, including "a prospect of a favorable plea agreement, or the expectation or hope of a lesser sentence" than might be imposed after an unsuccessful trial.

Under Michigan state law, before the trial court may accept a defendant's guilty plea, "the court, by questioning the defendant, must establish support for a finding that the defendant is guilty of the offense charged or the offense to which the defendant is pleading." M.C.R. 6.302(D)(1). The Michigan Supreme Court has stated that:

> The direct questioning of a defendant by the trial judge on [a] plea of guilty is required by the rule for the purpose of establishing the crime and the participation therein of the person pleading guilty. This is a precaution against involuntary or induced false pleas of guilty and against subsequent false claims of innocence.

*People v. Barrows*, 358 Mich. 267, 272, 99 N.W.2d 347 (1959), *see also, People v. Montrose*, 201 Mich.App. 378, 506 N.W.2d 565 (1993).

■ However, no federal constitutional issue is raised by the failure of a Michigan trial court to comply with state law or court rule concerning establishing the factual basis of a guilty plea. "The requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes." *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir.1995)(citing *Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir.), *cert. denied*, 508 U.S. 977, 113 S.Ct. 2974, 125 L.Ed.2d 672 (1993)). Violations of state law and procedure that do not infringe specific federal constitutional protections are not cognizable claims under § 2254. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). On habeas review, a federal court is not permitted to review whether a plea colloquy con-

formed with the strictures of state rules, but only whether it comported with the requirements of constitutional due process. *Ramos v. Rogers,* 170 F.3d 560, 563 n. 2 (6th Cir.1999). The fundamental constitutional consideration when a petitioner challenges his plea is whether it was voluntary.

Thus, Petitioner's claim that the trial court failed to establish a sufficient factual basis to support his guilty plea does not provide a basis for federal habeas relief, because there is no federal constitutional requirement that a factual basis supporting a guilty plea be established, or that the defendant admit factual guilt, so long as the plea is intelligently and voluntarily made.

■ Further, Petitioner's conclusory allegations do not prove that no factual basis supporting his plea existed or was shown. "The ideal means to establish the factual basis for a guilty plea is for the [trial] court to ask the defendant to state, in the defendant's own words, what the defendant did that he believes constitutes the crime to which he is pleading guilty. So long as the [trial] court ensures that the defendant's statement includes conduct—and mental state if necessary—that satisfy every element of the offense, there should be no question concerning the sufficiency of the factual basis for the guilty plea." *United States v. Tunning,* 69 F.3d at 112.

■ At his guilty plea proceeding, Petitioner admitted that, while armed with a BB gun, he pushed his way into the cabin occupied by his ex-wife and Ms. Pecnik, with the intent of scaring his ex-wife, and that he threatened her with the gun. Plea Tr. at 15–16. The elements of first degree home invasion are established where it is shown that the defendant enters a dwelling without permission of the owner or lawful occupant and at any time while entering, present in, or exiting the dwelling, assaults with a dangerous weapon a person lawfully present in the dwelling. M.C.L. § 750.110a(2); *People v. Warren,* 228 Mich.App. 336, 347–48, 578 N.W.2d 692(1998), *affirmed in part, reversed in part on other grounds,* 462 Mich. 415, 615 N.W.2d 691 (2000). The first degree home invasion statute does not require that there be a "breaking." Rather, entering without permission with the intent to commit a felony is sufficient to support a conviction of first degree home invasion. *Id.* Even if the trial judge believed Petitioner's assertion that the gun in question was a BB gun (which the judge was not required to do, of course), a BB gun is a dangerous weapon. Review of the plea transcript shows that Petitioner explicitly admitted all of the elements of first degree home invasion.

■ Furthermore, under Michigan law, *"[t]he issue of factual basis does not relate to guilt or innocence, but to whether there is evidence on which the trier of fact might have convicted the defendant at a trial.* A defendant can protest his innocence and yet plead guilty if his plea, under all the circumstances, is an informed, understanding choice of the alternatives that confront him." *People v. Mauch,* 397 Mich. 646, 667, 247 N.W.2d 5 (1976)(Levin, J., concurring)(emphasis added). A factual basis is sufficient if an inculpatory inference can be drawn from what the defendant has admitted, even if exculpatory inferences could also be drawn. *Guilty Plea Cases,* 395 Mich. 96, 128–32, 235 N.W.2d 132 (1975), *cert. denied,* 429 U.S. 1108, 97 S.Ct. 1142, 51 L.Ed.2d 561 (1977). Even if the defendant denies an element of the crime, the trial court may properly accept the defendant's guilty plea if an inculpatory inference can still be reasonably be drawn concerning that element from what the defendant said. *People v. Clark,* 129 Mich.App. 119, 122, 341 N.W.2d 248 (1983). Review of the

record shows that it is beyond doubt that inculpatory inferences that Petitioner committed all of the elements of first-degree home invasion could reasonably be drawn from Petitioner's admissions at his guilty plea hearing.

Additionally, under Michigan law, even where the trial court fails to elicit a factual basis of an element of the offense at the time of taking the guilty plea, the defendant is not entitled to have his conviction reversed on that basis where the factual basis of the defendant's guilty plea is supported by the record of his preliminary examination. *People v. Benedict*, 36 Mich.App. 653, 655, 194 N.W.2d 51 (1971). Review of Petitioner's preliminary examination shows that overwhelming evidence of his guilt of first degree home invasion was provided at that proceeding.

Petitioner alleges that an adequate factual basis to support a home invasion charge could not be made, because "he had unfettered access to the cabin and could come and go as he pleased." Petition at 6. Petitioner is in denial of the facts. Petitioner acknowledges, as he must, that the cabin he invaded (that is, entered without permission) belonged to his ex-wife's father or parents and that it was occupied at the time of his offense by his ex-wife Jean Hobig and Gerri Pecnik. Petitioner contends that he had free access to the cabin during his marriage to his ex-wife and asserts that this free access continued up to and including the night of his offense, thereby making it impossible for him to commit a home invasion of the premises. This last contention is spurious.

At Petitioner's preliminary exam Jean Marie Hobig testified that the cabin belonged to her father. At the time of the offense Ms. Hobig was still married to Petitioner, as they were still in the process of divorcing. However, Ms. Hobig testi-fied that Petitioner was not invited to the cabin at the time of the offense, and did not have her permission or the permission of her parents to be there at that time. Assuming that Petitioner had been present there before with the permission of his ex-wife and/or her parents does not in any way establish that he had permission to be there on the night of the offense.

This is not a case where the defendant was accused of breaking into a home in which he was still living. While Petitioner and Ms. Hobig were still legally married at the time of the offense, it was undisputed that they were no longer living together. Nor is this a case where the defendant was accused of breaking into a home in which he was or had recently been living and/or in which he still had substantial personal possessions. On the contrary, it was shown that Petitioner did not have permission to be in the cabin on the night of the offense and had not been invited to come there that night.

Petitioner further maintains that his ex-wife's act of opening the inside door after he announced his presence constituted an invitation to enter which negates any home invasion. This contention has no merit. It is common, although not always judicious or safe, to open an inside door when hearing a knock on an outside door, or hearing or recognizing the voice of someone seeking entry. This action does not in itself give the visitor the right or permission to enter the dwelling. Ms. Hobig testified unequivocally that she did not invite Petitioner to or inside the cabin and that he did not have permission to be there. Ms. Hobig's action of opening an inside door was not an invitation to come inside.

Further, Petitioner admitted that he pushed his way inside. This constituted

an admission that he entered uninvited.[4] Moreover, once inside, Petitioner began brandishing a handgun, paused to load it and threatened Ms. Hobig and Ms. Pecnik with it, while verbally threatening to kill both of them. The victims' ordeal lasted for about an hour and a half. Petitioner's method of gaining entry and his actions once inside need not be ignored when considering whether he really had (or even believed he had) permission to enter the cabin and whether was (or even believed he was) an invited guest.

For all of the above stated reasons, Petitioner's claim that the trial court failed to establish a sufficient factual basis to support his guilty plea has no merit and does not entitle him to habeas corpus relief.

## 2. Claim II—The Voluntariness of Petitioner's Guilty Plea and His Claim of Ineffective Assistance of Counsel

Petitioner contends that his guilty plea was misinformed, unintelligent, and involuntary, because it was based on ineffective assistance of counsel. Petitioner alleges that counsel failed to inform him that entering the dwelling without permission was an element of first degree home invasion and failed to investigate or establish whether Petitioner may have been too intoxicated to form the specific intent to commit first degree home invasion. Petitioner contends that he would not have pleaded guilty if he had been informed that entry without permission was an element of the crime and that voluntary intoxication could be a defense. Review of the record shows that Petitioner's plea was voluntary and intelligent and that his claims of ineffective assistance of counsel have no merit.

■■■■ A guilty plea entered into in state court must be voluntarily and intelligently made. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A guilty plea is voluntary when it has not been induced by threat by misrepresentation, or by improper representations such as bribes, and the defendant is fully aware of the direct consequences of the plea when he enters into it. "A guilty plea, if induced by promises or threats which deprive it of a the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). The plea must be made with knowledge of the "relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The maximum sentence which may be imposed upon a plea of guilty is a fundamental relevant circumstance and likely consequence. "[F]or a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentence which could be imposed." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir.1994). This includes whether a sentence imposed pursuant to a guilty plea is consecutive to or concurrent to another sentence. *Hart v. Marion Correctional Inst.*, 927 F.2d 256 (6th Cir.1991); *Willis v. Jabe*, 869 F.2d 1494, 1989 WL 20578 (6th Cir.1989)(unpublished *per curiam*); *Garner v. Seabold*, 983 F.2d 1066, 1992 WL 393175 (6th Cir.1992)(unpublished *per curiam*).

---

4. Petitioner's act of pushing open the door was also a "breaking." *See, People v. Davis*, 22 Mich.App. 70, 176 N.W.2d 715 (1970) and *People v. Kedo*, 108 Mich.App. 310, 310 N.W.2d 224 (1981)(holding that the use of the slightest force in entry is sufficient to show a breaking). *See also, People v. Hill*, 36 Mich. App. 679, 193 N.W.2d 909 (1971) and *People v. Finney*, 113 Mich.App. 638, 318 N.W.2d 519 (1982)(holding that pushing aside an already opened door is sufficient to constitute a breaking).

■ "A guilty plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense." *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

■ "[W]hen a defendant enters a guilty plea, the state has the burden to show that the plea was voluntary and intelligent. When a defendant subsequently brings a federal habeas petition challenging his plea, the state generally satisfies its burden by producing a transcript of the state court proceeding." *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir.1993). "While 'the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law, and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d),' the historical facts underlying such pleas are entitled to deference under the statute." *Sargent v. Waters*, 71 F.3d 158, 160 (4th Cir.1995)(quoting *Marshall v. Lonberger*, 459 U.S. 422, 431–32, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)). "Determining whether a plea was made voluntarily requires an evaluation of all the relevant circumstances surrounding the plea. The 'ultimate question' is if the plea was in fact voluntary and intelligent." *King v. Dutton*, 17 F.3d at 153 (citations omitted); *Berry v. Mintzes*, 726 F.2d 1142 (6th Cir.), *cert. denied*, 467 U.S. 1245, 104 S.Ct. 3520, 82 L.Ed.2d 828 (1984).

■ Petitioner contends that his attorney coerced him to plead guilty and failed to inform him that entry into the dwelling without permission was an element of first degree home invasion. Review of the record, including the guilty plea hearing and the preliminary examination, shows that there was overwhelming evidence that Petitioner entered his ex-wife's father's cabin without permission. Petitioner admitted that did so while armed with a gun intending to scare his ex-wife. Once inside, Petitioner stayed inside the cabin for about an hour and a half while brandishing the gun and threatening to kill his ex-wife and Gerri Pecnik in the cabin. There is no reasonable possibility that a defense of having permission to enter the cabin could have succeeded. On the contrary, in light of the evidence of Petitioner's guilt, such a defense would have been ludicrous.

Petitioner asserts that defense counsel failed to adequately inform him of the possibility of a defense of voluntary intoxication. Felonious assault is a specific intent crime to which the defense of voluntary intoxication is available. *People v. McMaster*, 105 Mich.App. 162, 306 N.W.2d 434 (1981); *People v. Wilson*, 113 Mich. App. 591, 592, 318 N.W.2d 479 (1981). However, the record does not support Petitioner's claim that failing to advise him to follow or develop this defense was prejudicial attorney error. Petitioner may have been intoxicated during the incident. However, Petitioner was sober enough to be able to drive about four hours from Detroit, Michigan, to Kalkaska, Michigan to get to his ex-wife's father's cabin. Petitioner was sober enough to find the cabin, which the trial judge described as being in a remote area, in the middle of the night. Petitioner was sober enough to remain conscious, menacing and threatening his ex-wife and Gerri Pecnik for about an hour and a half. He was sober enough to load his gun and turn his back to his victims while doing it. He was sober enough to tell his wife he had to kill her for allegedly

breaking their divorce agreement and tell Gerri Pecnik that he had to kill her because she was a witness. Finally, Petitioner was sober enough to leave and drive away after about an hour and a half inside the cabin. These facts do not indicate that a defense of voluntary intoxication would have had any realistic chance of success.

Petitioner asserts that his attorney coerced him to plead guilty. However, Petitioner was asked at sentencing if he had been threatened or coerced to plead guilty. He replied that he had not been threatened or coerced. Petitioner was informed of the constitutional rights he would be giving up by pleading guilty and he replied that he understood his rights and wanted to plead guilty. Petitioner was informed of the maximum sentences he would face as well as the charges which would be dismissed and his sentence for escape if he pleaded guilty. The record shows that Petitioner made a voluntary and intelligent choice to plead guilty and limit his sentence exposure. Petitioner now asserts his innocence. However, Petitioner's admissions of factual guilt in open court under oath are entitled to great weight. Further, in light of the record, his admissions of guilt are also more convincing than his present claims of innocence. *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

■ The evidence of Petitioner's guilt as set forth at the preliminary examination was overwhelming. Even if defense counsel had strongly advised Petitioner to plead guilty based on the evidence of his guilt, "strong advice under such circumstances does not constitute coercion." *Meachem v. Keane,* 899 F.Supp. 1130, 1141 (S.D.N.Y.1995). Petitioner pleaded guilty upon the advice of counsel after being fully advised of his rights by the trial judge.

The Court concludes that Petitioner voluntarily and intelligently admitted his factual guilt.

Petitioner's ineffective assistance of counsel claim has no merit. Where the petitioner contends that ineffective assistance of counsel rendered guilty plea unconstitutional, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). *See also, Wanatee v. Ault,* 259 F.3d 700, 703–04 (8th Cir.2001). The determination required by *Hill v. Lockhart* depends in large part on a prediction of what the outcome of a trial might have been. *Id.* at 58–60, 106 S.Ct. 366; *Armstead v. Scott,* 37 F.3d 202, 206 (5th Cir. 1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted at trial. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.

As noted above, Petitioner's assertions that he had strong defenses to the first degree home invasion charge of permission to enter the cabin and voluntary intoxication are unpersuasive and lack merit. Further, Petitioner obtained dismissal of several serious felony charges, including felony firearm charges carrying a mandatory consecutive two year prison term. Under these circumstances, Petitioner cannot show that it was attorney error to advise him to plead guilty, or that any attorney error prejudiced him, because examination of the totality of the circumstances shows that Petitioner would most

probably have been convicted of the same and additional charges after a trial. Petitioner has not shown that his attorney was ineffective. In order to establish ineffective assistance of counsel, a petitioner must show that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 691–92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must show that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Id.* at 687–88, 104 S.Ct. 2052. Second, petitioner must show that counsel's deficient performance prejudiced the defense. This requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Petitioner has not shown that counsel's performance was deficient, or that but for any errors made by counsel, the result of his case would have been more favorable to him. Therefore, Petitioner's challenge to the voluntariness of his plea is denied.

## C. Claim III—Sentencing Claim

Petitioner contends that his consecutive sentences of seven and a half to twenty years for first degree home invasion and two to four years for escape are unconstitutional because the sentencing judge considered "contested allegations in determining sentence without proof by a preponderance of the evidence of the truth of these allegations." This claim has no merit.

■ The Due Process Clause of the Fourteenth Amendment forbids a sentencing court from relying on materially false or unreliable information in imposing sentence. *United States v. Tucker*, 404 U.S. 443, 447–49, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *United States v. Jackson*, 990 F.2d 251, 253–55 (6th Cir.1993). To show that the use of incorrect information violated due process, the petitioner must show both that the information was (1) material, that is, significant, (2) false, and (3) that the sentencing judge relied upon it in imposing sentence. *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir.1990). Petitioner has failed in both regards.

■ Review of the sentencing transcript shows that the sentencing judge imposed the sentences he did because he was convinced that, without permission or invitation, and while armed with a pistol and bullets, Petitioner forcibly entered the remotely situated cabin occupied by his ex-wife and her friend at about four a.m. and threatened the women with this gun for about two hours. Sentencing Tr. at 63. Commenting on the seriousness of Petitioner's offense, the judge stated that:

> There is not much of any type of offense that is more serious than this, other than if the pistol had been discharged with bodily injury to one of the victims. Certainly, the psychological ramifications of this type of activity are as severe as one could reasonably anticipate would ever occur.

Sentencing Tr. at 63–64.

The sentencing judge also noted that Petitioner tried to escape while awaiting trial, and stated that he "has been for at least the past year, basically out of control," that he needs a considerable period of time to straighten out, and "[t]he victims need the assurance that they need not be concerned about the Defendant for a considerable period of time." Sentencing Tr. at 64.

This Court is aware that "[s]entencing courts have traditionally heard evidence

and found facts without any prescribed burden at all." *McMillan v. Pennsylvania,* 477 U.S. 79, 91, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)(citing *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) and declining to establish a constitutional burden of proof at sentencing). For the purposes of this opinion, however, this Court shall assume without deciding that the appropriate burden of proof for the State sentencing court to find before relying upon information in imposing sentence is a preponderance of the evidence. The preponderance standard is frequently relied upon to resolve factual disputes at adversarial proceedings. While less demanding than proof beyond a reasonable doubt, or even proof by clear and convincing evidence, the preponderance standard nevertheless requires a neutral factfinder to weigh competing evidence and, where appropriate, to make credibility findings before deciding whether a disputed matter is more likely true than not true. *United States v. Rosa,* 17 F.3d 1531, 1542 (2d Cir.), *cert. denied,* 513 U.S. 879, 115 S.Ct. 211, 130 L.Ed.2d 140 (1994). Further, the preponderance of the evidence standard is used by the federal courts in making most sentencing decisions under the Federal Sentencing Guidelines, indicating the appropriateness of this standard. *See, e.g., United States v. Kroledge,* 201 F.3d 900, 908 (7th Cir.2000)(holding that a preponderance of the evidence is all that is required under the Sentencing Guidelines for a finding of fact, even where a 33 to 41 month sentence was enhanced to 40 years, while acknowledging that there might be "a rare instance where a higher standard might be justified"); *but see, United States v. Jordan,* 256 F.3d 922, 929–30 (9th Cir.2001)(holding that the preponderance of the evidence standard is appropriate in making most decisions under the Sentencing Guidelines, but finding that proof by clear and convincing evidence is required when "a sentencing factor has an extremely disproportionate impact on the sentence relative to the offense of conviction").

Petitioner's burden in this habeas action is to show that the sentencing judge relied upon materially mistaken information in determining his sentence. If sufficient evidence in the record appears so that, after making credibility determinations, the sentencing judge could have reasonably found the facts supporting his sentencing decision by a preponderance of the evidence, Petitioner will be unable to meet his burden.

The sentencing judge imposed the sentences he did because he concluded that Petitioner had committed an extremely serious armed and protracted home invasion which involved making credible death threats against known victims including his ex-wife and another person who was a witness to his actions. Petitioner thereafter escaped from jail. The judge concluded that Petitioner was dangerous, needed a considerable time to rehabilitate, and that the victims needed to be protected from him for a considerable period of time. Review of the record of the sentencing transcript shows that all of the facts underlying these conclusions were proven, by at least a preponderance of the evidence, by Petitioner's own admissions. Further, the sentencing judge was also entitled to consider the evidence presented at the preliminary examination, which set forth in great detail the armed, protracted, and death-threatening nature of Petitioner's actions. Therefore, Petitioner's claim, on its own terms, lacks merit.

Moreover, Petitioner has failed to show that the sentencing judge relied upon materially mistaken information in imposing sentence on him. Petitioner cannot show that the state courts' imposition and affirmation of his sentences involve any decisions which are unreasonable applications

of, or contrary to, controlling federal constitutional law, or involve unreasonable determinations of fact in light of the evidence. Therefore, Petitioner's sentencing claims are denied.

## V. Conclusion

Petitioner's guilty plea was voluntary and intelligent and was made after receiving adequate notice of charges against him, the maximum sentences he faced, and the constitutional rights he was waiving by pleading guilty. Petitioner received the benefit of the plea bargain to which he agreed, including dismissal of several serious felony charges among them a felony firearm charge involving a mandatory consecutive two year prison sentence. Petitioner was not deprived of the effective assistance of counsel in the plea taking process.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED.**